**ADLER ENTERPRISES, INC.**

v.

**CARSON, PIRIE, SCOTT & CO.**

and

**National Potteries.**

Civ. A. No. 61 C 1744.

United States District Court
N. D. Illinois, E. D.
April 17, 1963.

Silverman, Mullin & Cass, Chicago, Ill., for plaintiff.

Schneider, Dressler, Goldsmith & Clement and Carl Geppert, Chicago, Ill., for defendant.

IGOE, District Judge.

1. These are actions for infringement of Letters Patent of the United States and the Court has jurisdiction under the Patent Law, Title 35 (1952) U.S.C. § 281 and Title 28, U.S.C. § 1338.

2. Plaintiff in each action is Adler Enterprises, Inc. (hereinafter called "Adler"), an Illinois corporation and the owner of U. S. Patent No. 2,984,036 granted to Joseph I. Adler, Jr. on May 16, 1961 for a "Garland Construction". Plaintiff is a resident of this judicial district.

3. Carson, Pirie, Scott & Co. (hereinafter called "Carson's") is the defendant in Civil Action No. 61 C 1744. Carson's is an Illinois corporation having a regular and established place of business in this district.

4. National Potteries (hereinafter called "National") is the defendant in Civil Action No. 61 C 1745. National is an Ohio corporation having a regular and established place of business in this district and National has committed acts of infringement in this district as determined by the decision of this Court dated January 18, 1962.

5. These actions have been consolidated for purposes of trial under Civil Action No. 61 C 1744. The defendant Carson's was indemnified by Mitch Myles Co. and Noel Decorations, both companies of New York who supplied Carson's with the accused garlands and the conduct and control of the trial on behalf of Carson's was taken over, at least, by said Noel Decorations.

6. Each defendant has stipulated that the respective accused articles introduced at the trial were sold after the date of issue of the patent in suit and prior to commencement of the action against it. Each defendant had actual notice of infringement prior to commencement of the action.

7. Plaintiff applied statutory patent notice to the patented garlands sold by it after issuance of the patent in suit.

8. In its Answer to the Complaint, each defendant denied infringement and asserted invalidity of the patent upon specified grounds. Also, each defendant filed a counterclaim for declaratory judgment relief under 28 U.S.C. § 2201 to have the patent in suit declared invalid upon the same grounds pleaded in its Answer. Plaintiff admitted that the Court has jurisdiction and denied that the patent in suit is invalid.

9. The respective garland products sold by the defendants are identified as

Plaintiff's Exhibits 3, 4, 5 and 37 and these accused garlands are charged to infringe all of the claims of the patent in suit.

10. The patented invention is for an artificial garland construction which employs for the first time an elongate, flexible, hollow plastic tube or strand as the sole support member for a plurality of artificial foliage members. Each of the foliage members, which can be molded of plastic to desired shapes and configurations, has a molded sleeve integral therewith which is provided with an axial passageway. Preferably, the axial passageway is tapered so that it has an end which is slightly smaller in diameter than the outside diameter of the hollow plastic tube. The patented garland is assembled by inserting the hollow plastic tube through the larger diameter ends of the passageways of the sleeves of the foliage members and moving the foliage members to spaced apart locations along the length of the hollow tube, as desired. The foliage members are both slidable and rotatable along the length of the tube because of the resiliency of the hollow plastic tube, but the foliage members also frictionally grip the tube so that they are retained in the locations along the length of the tube at which they are placed by friction and without interfering with the desired flexibility of the hollow flexible tube across the length thereof. The flexible, hollow tube may have longitudinally extending flutes along the exterior surface thereof.

11. The patented invention provided a unique artificial garland which could be draped gracefully repeatedly without resulting pre-set bends because of the flexible, hollow tube which supports the foliage members thereon; this garland was economical to manufacture and could be tightly rolled into a ball and packaged into a small bag so as to give rise to important advantages in shipping, storaging, handling and the like thereof; the invention created a new market and avenue of sale for such garland constructions by making available artificial garlands which could be sold in mass quantities to the general public across retail counters.

12. Prior to the advent of the patented garland, artificial garlands of various kinds were available and these were manufactured using wire strands, either wrapped or unwrapped, as the support member for the foliage members. Sometimes, a roping strand was used. The foliage members were formed each with a wire stem part which was secured to the wire or roping strand to construct a garland with many foliage members individually secured along the length of the strand. In the case of wire strands, the resulting garlands were not flexible and resilient so that the artificial garland could be draped gracefully and hung repeatedly only with difficulty. The angular orientation of the foliage members had to be adjusted by manipulating each foliage member separately. The required lengths for the garlands resulted in bulky and heavy structures because of the long wire strands employed and which could not be packaged compactly and conveniently without realizing set bends in the wire. Repeated bending of wire strands caused them to break. Such prior structures were relatively expensive and there was no artificial garland such as the patented invention which was sold in volume across the retail counters to the general public for use in the home or the like.

13. The inventor, Joseph I. Adler, Jr., of the patented garland testified concerning unsuccessful attempts for years to develop an artificial garland which would accomplish the various functions desired for such a garland although other garlands had been available. The patented garland was invented early in November, 1958 by said Joseph Adler and substantiated by the testimony of Mrs. Anna Gudaidis who made the first sample under his direction, and by Mrs. Lena Lankan and Mr. Harry Ralston. This testimony was not disputed or controverted.

14. The invention of Patent No. 2,-984,036 was first introduced on the market for resale early in 1959 by Mr. Harry

Ralston. Orders for the patented product resulted immediately and the patented product was in immediate commercial demand and became a success without the benefit of expensive advertising and sale efforts on the part of the plaintiff. Responsible employees of the defendant Carson's testified that the product was a success.

15. The invention of Patent No. 2,-984,036 satisfied a long felt need and want in the artificial foliage and display field and provided for the first time an artificial garland product which was sold in mass volumes across retail counters to the general public.

16. After the issuance of Patent No. 2,984,036, plaintiff was solicited for patent licenses and eight licenses had been granted under the patent in suit at the time of the trial. Additionally, two large retail department businesses of national renown had acknowledged the patent in suit and a consent judgment upholding validity of the patent has been entered in this Court.

17. The patent application Serial No. 857,854, which later issued as Patent 2,984,036, was filed on December 7, 1959, less than one year after marketing of the patented garland.

18. Patent 2,984,036 contains a written description accompanied by drawings of the invention and of the manner of making and using artificial garland in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, to make and use the same, and sets forth the best mode contemplated by the inventor of carrying out his invention.

19. Claims 1, 2, 3, 4 and 5 of patent 2,984,036 particularly point out and distinctly claim the subject of the Joseph I. Adler, Jr. inventions.

20. None of the prior art patents or publications relied upon by the defendants is more pertinent to the validity of the claims of Patent 2,984,036 than that cited or considered by the Patent Office or that cited by the defendants and considered by this Court. The Court further has considered all of the prior art artificial foliage structures introduced into evidence by plaintiff and defendants and as well, the teachings thereof ·in combination with the prior art patents and publications relied upon by defendants. The Court finds that some of these prior art patents and structures show piecemeal and separately some of the features of the patented combination as set forth in the claims of Patent 2,984,-036 but that no one before the inventor Adler had appreciated how those features could be combined successfully to provide the successful artificial garland construction described and claimed in said Patent 2,984,036.

21. None of the prior art introduced into evidence and relied upon by the defendant for anticipating the claimed inventions shows the use of a flexible, hollow plastic tube or stand as the sole support member for a plurality of artificial foliage members in an artificial garland construction or any other artificial foliage construction.

22. Claims 1 through 5 of Patent 2,-984,036 are directed to and define a new and patentable combination of functionally cooperating elements, which combination would not have been obvious at the time the invention was made to a person skilled in the art, based on knowledge of the prior art patents and publications and structures introduced in evidence by defendant.

23. Joseph I. Adler, Jr. is the original, sole and first inventor of the inventions of Claims 1, 2, 3, 4 and 5 of Patent 2,984,036. The inventions of these claims were not known or used by others in this country before the invention thereof by said Joseph Adler, were not patented or described in this country or any foreign country before the invention thereof by said Joseph Adler or for more than one year before the presentation of the inventions of said claims to the Patent Office in the form of a patent application, and were not in public use or sale before the invention thereof by said Joseph Adler or for more than one year before the presentation of

said claims to the Patent Office as a patent application.

24. The testimony of Stanley A. Erns, defendants' only witness, was not corroborated by any sufficiently credible evidence presented at the trial which would support a finding that the patented invention was on public sale or in use in this country prior to the invention thereof by Joseph I. Adler, Jr. or for more than one year prior to the filing of the patent application from which Patent 2,984,036 matured, or that the patented invention was known or used by others in this country prior to the invention thereof by Joseph I. Adler, Jr.,

25. Claim 1 of Patent 2,984,036 is representative of the claims charged to have been infringed by defendants and reads as follows:

"In an artificial garland construction, an elongate, hollow plastic tube having substantial flexibility transverse to the longitudinal axis thereof and a plurality of artificial molded foliage members slidably engaged on the tube at spaced locations along the length thereof, each of said foliage members including a sleeve member having said tube extending therethrough, said sleeve and tube being frictionally engaged one with the other to limit inadvertent relative movement therebetween."

26. Careful examination of the accused garlands and the weight of the evidence leads the Court to find that the accused garlands are copied from the commercial form of plaintiff's garland and from the embodiment disclosed in Patent 2,984,036 with only minor, inconsequential variations. Defendants have not introduced any evidence or testimony to distinguish between the structure of the accused garlands and the patented garland.

27. Every finding of fact deemed a conclusion of law is hereby adopted as a conclusion of law.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of these actions. Venue was properly laid in this judicial district.

2. Plaintiff is the owner, by assignment, of United States Letters Patent 2,984,036 issued May 16, 1961 and was the owner of said patent at the time of filing of the original Complaint in each of the actions herein.

3. Claims 1, 2, 3, 4 and 5 of United States Letters Patent 2,984,036, and each of them, are good and valid in law and have been and are infringed by the defendants and each of them.

4. A patent is presumed to be valid upon issuance by the United States Patent Office, and such presumption can be overcome only by clear and cogent proof, and the burden of overcoming this presumption rests upon the defendants.

5. The failure of those working in the field to accomplish the results obtained by patentee is good evidence that the patentee's contribution constitutes patentable invention.

6. Patentable invention is present unless the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the invention pertains.

7. The commercial success and recognition of the subject matter of Patent 2,984,036 adds strength to its validity of claims 1 through 5, inclusive of Patent 2,984,036 is, however, clear and the Court has not found it necessary to rely upon such commercial success and recognition in finding these claims valid.

8. A patented combination cannot be anticipated piecemeal by finding individual features separately in the prior art.

9. It is not sufficient to constitute an anticipation that a device of the prior art might, by modification, be made

to accomplish the function performed by the patent in question, if it were not designed, nor adapted, nor actually used, for the performance of such functions.

▪ 10. "Hindsight" is not a proper basis for determining patentability. While a particular solution to a problem may seem simple in retrospect, after its disclosure, foresight applied as of the date of the invention is the proper test of invention.

▪ 11. Disclosures in prior art foreign patents are strictly construed and are restricted to what is clearly and definitely disclosed therein. Nordberg Mfg. Co. v. Woolerly Machine Co., (CCA 7), 79 F.2d 685, 687.

12. It is reasonable to conclude that the Patent Office Examiner considered and discarded all prior art similar to that asserted by the defendants.

▪ 13. Patents are to be liberally construed so as to uphold and not destroy the inventor's rights. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; Keystone Mfg. Co. v. Adams, 151 U.S. 139, 14 S.Ct. 295, 38 L.Ed. 103.

14. The prior art was open to the defendants. Defendants' imitation of the patented structure is another indication of invention.

15. None of the prior art cited by the defendants, taken singly or in combination, in any way negatives the validity and scope of claims 1 through 5 of Patent 2,984,036. None of these references is more pertinent to the validity of these claims than the references cited by the Patent Office experts, and these experts considered these claims clearly patentable by the issuance of the patent.

▪ 16. The test of infringement is whether the accused device is of substantially the same structure, does substantially the same work in substantially the same way and accomplishes the same result.

17. The elements of defendants' accused structures, and each of them, read on the literal language of each of the claims of Patent 2,984,036 and there is complete identity of means, operation and result: they function in the same manner, accomplish the same results in the same way, and infringe claims 1 through 5 of said Patent 2,984,036.

18. The defendants and each of them knowingly, willfully and wantonly infringed the asserted claims of the patent in suit.

▪ 19. Plaintiff is entitled to an injunction restraining defendants, and each of them, against further infringement of all of the claims of the patent in suit; and plaintiff is further entitled to an accounting against defendants, and each of them, for profits and damages occasioned by defendants' infringement of the patent in suit, together with interest thereon and costs of these actions and plaintiff should have judgment therefor and execution thereon.

▪ 20. The defense of prior use and sale of the patented garland in the United States more than one year prior to filing date of the application from which Patent 2,984,036 matured must be proven beyond a reasonable doubt. Defendants have not sustained their burden of proof by the sole and uncorroborated testimony of defendants' witness, Stanley A. Erns.

21. The defense that the subject matter claimed in Patent 2,984,036 is an intermediate product in the manufacture of artificial foliage has not been sustained by the evidence introduced at the trial by the defendants.

22. The defense that Joseph I. Adler, Jr. was not the original inventor of the subject matter of Patent 2,984,036 was not sustained by the evidence introduced at the trial by the defendants.

23. The counterclaim of each of the defendants was based on allegations having no justification in fact, and no substantial evidence in support thereof was introduced at the trial.

24. The equities in these suits are found to be with the plaintiff, and plaintiff should prevail over the defendants.

25. All matters regarding notice, patent marking, damages and costs are reserved for further hearing at such time as an accounting against the defendants, as hereinabove set forth, is had.

26. Any Conclusion of Law entered herein which may be construed in whole or in part as a Finding of Fact shall be so deemed and treated as if set forth under Findings of Fact herein.