**FROHOCK–STEWART, INC., Plaintiff,**
v.
**REED–CROMEX CORPORATION,**
**Defendant.**

Civ. A. No. C 64–475.

United States District Court
N. D. Ohio, E. D.

Feb. 21, 1966.

———◇———

J. H. Slough, of Slough & Slough, Cleveland, Ohio, and I. Stephen Samuels, of Russell, Chittick & Pfund, Boston, Mass., for plaintiff.

William Isler, of Isler & Ornstein, Albert R. Teare, of Teare, Teare & Sammon, Cleveland, Ohio, for defendant.

GREEN, District Judge.

This case involves questions concerning the validity and infringement of the John J. Hussey Patent No. 2,940,085, which has been assigned to Frohock-Stewart, Inc., plaintiff herein. The patent in suit covers a bathtub safety rail, which is adapted to be mounted over the rim of a bathtub to give a secure hand hold for safety entering and getting out of the bathtub and to assist the user in sitting down and rising up in the tub.

The evidence indicated that in late 1957 John J. Hussey, who is President of the plaintiff corporation, developed a bathtub safety rail which he believed to be superior to all other such devices then on the market. In his testimony Mr. Hussey stated that prior to making his invention he had surveyed the bathtub safety rails then on the market, and believed that they were deficient in that they had clamp attachments which protruded from the side of the tub and/or lacked resistance to heavy pressure thereon. On November 28, 1958 he filed his claim for a patent on his improved rail and the patent issued on June 14, 1960.

John Hussey's invention includes a horizontal rod-like hand grip rail which is down turned at its ends, with each end of the hand grip attached to a mounting bracket. The patent indicates that the

mounting brackets have an inverted U-shaped clamp, each clamp made up in two members, with a horizontal fastener to draw the clamp arms together in order to secure the hand grip to the wall of the bathtub. The arms or extensions to the clamp overlap and telescope into one another, the underlying extension being bent downward and then horizontally reversed, forming a parallel spaced member which makes a broad surface contact with the rim of the tub. The two arms are drawn together by a fastener passing through the overlying arm and through the downward portion of the underlying arm. In the patented device the fastener which draws the two arms of the clamp together is attached to a nut.

The down turned ends of the hand rail are attached to the clamp by means of a fastener which is used for adjustment purposes, which protrudes through a slot in the underlying arm of the clamp.

The Hussey rail has no protrusions on either side which could present a hazard to the user thereof.

The evidence indicated that after the Hussey safety rail was introduced to the market in June of 1958 it met with great commercial success.

In January of 1963 the defendant placed on the market a bathtub safety rail. One of the said rails was introduced as an exhibit and appears to be an exact duplicate of the rail shown in the patent in suit. In February, 1963 plaintiff notified the defendant of the patent and demanded that it cease and desist from infringing same. Following receipt of the letter from plaintiff the defendant made a minor design change in its rail by threading the aperture in the down turned bracket portion to which the fastener was attached, thereby eliminating the use of the nut. Defendant has continued to manufacture and market that rail, which is the accused product herein.

It is the basic claim of the defendant that the plaintiff's patent is invalid. Defendant also contends that the change made in its safety rail, by eliminating the nut to fasten the two parts of the clamp, takes its product out of the reach of the patent claim, in the event it is determined that the patent is valid.

The defendant argues that the patent in suit covers an old and exhausted combination of elements consisting of (a) a pair of spaced brackets for spaced disposition on the rim of the bathtub, (b) a rod-like hand grip located and supported on said brackets, (c) means to detachably connect the hand grip at each end to one of said brackets, and (d) means for adjustably securing the arms of the brackets to the wall of the bathtub. It is defendant's claim that the old and exhausted combination of elements is shown in the following patents: [1]

| 1,061,328 | Sandberg | May 13, 1913 |
| 1,543,393 | Knott | June 23, 1925 |
| 2,034,705 | Anderson | March 24, 1936 |
| 2,045,815 | Wiesjahn | June 30, 1936 |
| 2,678,791 | McPhaden | May 18, 1954 |
| 2,756,439 | Bollen | July 31, 1956 |
| 2,807,029 | Armstrong | Sept. 24, 1957 |

Defendant contends that these patents contain disclosures which anticipate the Hussey patent.

It is the defendant's position that any invention on the part of Mr. Hussey is found only in the clamping mechanism,

[1]. In the pleadings Sparling Patent No. 2,-931,051 was relied upon, but was withdrawn at the trial when it was determined that the date of invention of the Hussey patent pre-dated the issuance of Sparling.

and does not extend to the combination of the brackets and the safety rail, which is the subject of the patent claim. Defendant argues that improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination, citing Lincoln Engineering Co. of Illinois v. Stewart-Warner Co., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938) and Timkin-Detroit Axel Co. v. Cleveland Steel Products Corp., 148 F.2d 267 (CA6, 1945).

The defendant further contends that the patent in suit is invalid under § 103 of the United States Code, Title 35, which provides that a patent may not be obtained if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which such subject matter pertains. It is the claim of the defendant that a person of ordinary skill in this art, with knowledge of the prior art patents to which reference has been made above, could have devised the invention which is the subject of the claim of the patent in suit.

On the other hand, plaintiff contends that its patent has elements which are new and greatly improved over the prior art. It is the position of the plaintiff that the Hussey patent reflects a nonobvious invention of a new bathtub safety rail construction, not previously shown nor suggested by the prior art. It is the claim of plaintiff that by reason of the interaction of its clamping device with the rail proper the rail is caused to be mounted on the bathtub in a completely secure fashion and remains stable regardless of the pressure or weight placed against the rail; that it will withstand downward pressure or lateral pressure; that its rail unit is compact and free from ungainly projections; that the mechanics of mounting the rail are extremely simple and can be installed by the average user, and that the rail is capable of being installed or used without scratching or marring the tub to which it is fastened.

The Court, in considering the Hussey patent and in reviewing the prior art references submitted by the defendant, is of the opinion that the most pertinent references relied upon by the defendant were cited as references in the file of the Hussey patent by the Patent Examiner in his consideration of the patent application, namely, the Sandberg, Knott, McPhaden and Armstrong patents. The patent was finally allowed by the Examiner over the said references.

It is this Court's opinion that the additional references cited by defendant, while they relate to bathtub safety rails, do not relate to the invention of plaintiff's patent to any significant degree.

Anderson Patent No. 2,034,705 (March 24, 1936) is on a safety handle for bathtubs. The mounting ends of the handle, however, while described as substantially U-shaped are of one piece construction, and are secured to the tub wall by means of an adjustable foot on each mounting. This is distinctly different from plaintiff's two piece movable mounting bracket arrangements.

The Wiesjahn Patent No. 2,045,815 (June 30, 1936) covers a combined bathtub safety grip and towel rack. The mounting and securing mechanism shown therein is also substantially different from that of plaintiff's patent, and involved a handle which protruded out from the side of the tub as a part of the mounting brackets.

The Bollen Patent No. 2,756,439 (July 31, 1956) covers a tub guard, which is also a form of hand rail. The mounting brackets thereof are essentially one piece castings and utilize a protruding handle as a part of the securing mechanism. This protruding handle was one of the factors which Mr. Hussey specifically considered to be a defect of the prior art rails.

■■■ Title 35 U.S.C. § 282 provides that a patent shall be presumed valid. The presumption of validity which at-

taches to a grant of a patent is a positive factor which must be overcome by clear and convincing evidence by one who asserts invalidity, and such presumption of validity is strengthened where the prior art patents relied upon by the defendant were considered and cited by the Patent Examiner. Universal, Inc. v. Kay Manufacturing Corp., 301 F.2d 140 (CA 4, 1962). This presumption is entitled to particular weight when the file wrapper discloses careful consideration of the application in the Patent Office before issue of the patent as in this case. Berry Bros. Corp. v. Sigmon, 317 F.2d 700 (CA4, 1963).

In this case the only expert testimony offered relative to the patented device was on behalf of the plaintiff. The defendant introduced into evidence the prior art patents relied upon as anticipations of plaintiff's rail, but did not introduce any other evidence.

Plaintiff's expert testified that the combination of the clamp shown in plaintiff's patent operating with the rail thereof produced a new result in bathtub safety rails, in that the plaintiff's rail is able to resist lateral pressures and further that the arms of the clamp would adjust in such a manner as to give a secure hold on a bathtub having tapered sides. It was his testimony that plaintiff's patented rail generally produced a new and useful result, not found in the prior art.

As previously stated, the Court believes that the most pertinent of the prior art cited and relied upon by defendant was considered by the Patent Office in the prosecution of the Hussey patent. This Court has concluded, as did the Patent Office, that the said prior art does not anticipate the Hussey patent, and that the advancement thereof over the prior art is not such as would be obvious to a person having ordinary mechanical skill in the art. It is the Court's opinion that the Hussey patent introduced new elements into the bathtub safety rail which did not appear in the prior art, by the use of the divided mounting bracket with the reversely turned portion on one of the arms thereof providing a flat surface in contact with the top ledge of the tub, resulting in an integrated safety rail which could be securely mounted, free from ungainly and hazardous projections, which would have a high degree of resistance to heavy lateral pressures and which could be used on a tapered tub side.

In a decision of January 14, 1966 the Court of Appeals for this circuit in a combination patent case stated as follows:

> Three necessary elements to sustain a patent are invention, novelty and utility. * * * It is here admitted the Kamlukin Patent is a combination patent of old and well known elements. Such a patent is strictly rather than liberally construed. * * * However, even though the elements of a combination are old and well known, if the combination is new and the result useful, it is patentable. [Citations omitted]. Simplicity Mfg. Co. v. Quick Mfg., Inc., 355 F.2d 1012.

In the course of that same opinion Judge Celebrezze admonished that "the prior art is not to be viewed with the aid of hindsight."

This Court is satisfied that the Hussey patent meets the standards of patentability as reflected above, although recognizing that this is a close case.

In a close case such as this, commercial success is a relevant consideration. Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406 (CA6, 1964). Although commercial success of an invention standing alone does not determine validity of a patent, the fact that such a product is a commercial success adds strength to the presumption of its validity. H. W. Gossard Co. v. J. C. Penney Co., 304 F.2d 515 (CA7, 1962); Adler Enterprises, Inc. v. Carson, Pirie, Scott & Co., 218 F.Supp. 325 (D.C.N.D., Ill., 1963). The evidence in this case is that plaintiff's product, based upon the Hussey patent, was a commercial success.

The Court has considered defendant's asserted defense that the patent in suit is invalid because the patent claim does not particularly point out and distinctly claim the alleged invention, as required by 35 U.S.C. § 112, and the Court finds this defense to be without merit.

■ It is the finding of this Court that United States Patent No. 2,940,085, issued to John J. Hussey on June 14, 1960, is valid.

■ Coming now to the question of the infringement by the defendant corporation of the patent, the original accused device manufactured by the defendant appears to be an exact copy of the patented device. Under these circumstances there is no question that this article was an infringement of the patent.

As previously stated herein, following receipt of the notification from the plaintiff that the defendant was charged with infringing plaintiff's patent, the defendant made a change in its product by threading the aperture in the down turned bracket portion of the clamp to which the fastener was attached, thereby eliminating the use of the nut which is used in plaintiff's product and is shown in the patent. The patent specifications provide, however:

"The fastener may be threaded with respect to the aperture in the downward portion; but on the other hand a nut may also be used in order to clamp these members together in clamping relationship to the sides of the tub."

This disclosure reflects that the patentee contemplated the alternate means of using a nut or threading the aperture to be attached to the fastener.

The use of a nut or the threading of the aperture are mechanical equivalents, and, it is therefore the Court's opinion that the safety rail which is presently manufactured and marketed by the defendant is an infringement of plaintiff's patent. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

■ In its trial brief defendant discussed the defenses of laches and estoppel herein. The Court finds that these defenses are not established by the evidence.

Judgment will be rendered in plaintiff's favor finding the patent in suit valid and infringed as charged in the complaint; an injunction will be granted restraining further infringement by defendant; jurisdiction will be retained pending an accounting for damages.

This Memorandum is adopted as Findings of Fact and Conclusions of Law pursuant to Rule 52, Federal Rules of Civil Procedure.